UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| DINA HOROWITZ, on Behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SUNEDISON, INC., AHMAD CHATILA, and BRIAN WUEBBELS,<br><br>Defendants. | Case No. 4:15-cv-01769-RWS |
| KENNETH J. MOODIE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SUNEDISON, INC., AHMAD CHATILA, and BRIAN WUEBBELS,<br><br>Defendants. | Case No. 4:15-cv-01809-ERW |

| | |
|---|---|
| ROBERT KUNZ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SUNEDISON, INC., AHMAD R. CHATILA, and BRIAN WUEBBELS,<br><br>Defendants. | Case No. 4:16-cv-00113-HEA |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF ANDREW C. NEWMAN FOR CONSOLIDATION OF THE ACTIONS, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**

**PRELIMINARY STATEMENT**

Presently pending before the Court are three securities class action lawsuits (the "Actions") brought on behalf of all persons who purchased common stock of SunEdison, Inc. ("SunEdison" or the "Company"), between February 19, 2014 and January 6, 2016, inclusive ("Class Period")[1]. Plaintiff in the Action alleges violations of the Securities and Exchange Act of 1934 (the "Exchange Act") against the Company, Ahmad Chatila ("Chatila"), and Brian Wuebbels ("Wuebbels") (all defendants other than the Company, collectively, the "Individual Defendants").[2]

Movants Andrew C. Newman ("Movant") lost approximately $441,058.82 as a result of the alleged fraud during the Class Period. Movant respectfully submit his memorandum of law in support of his motion for (a) consolidation of the actions (b) appointment as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995, as amended (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), and (c) for approval of its selection of Levi & Korsinsky LLP ("Levi & Korsinsky") as Lead Counsel and Swanson Midgley, LLC ("Swanson Midgley") as liaison counsel.

Movant believes that he has the largest financial interest in the outcome of the case.[3] As

---

1 The Actions are entitled *Horowitz v. SunEdison, Inc. et al.*, No. 4:15-cv-01769-RWS (the "*Horowitz* Action"), *Moodie v. SunEdison, Inc. et al.*, No. 4:15-cv-01809-ERW (the "*Moodie* Action") and *Kunz v. SunEdison, Inc., et al.*, No. 4:15-cv-00113-HEA (the "*Kunz* Action"). The *Horowitz* Action defines the Class Period as August 7, 2014 through November 9, 2015, inclusive. The *Moodie* Action defines the Class Period as June 16, 2015 through October 6, 2015, inclusive. The *Kunz* Action states the Class Period as February 19, 2014 through January 6, 2016, inclusive.

2 Specifically, plaintiffs in the Actions allege that all defendants violated Section 10(b) of the Exchange Act and rule 10b-5 promulgated under the Exchange Act, as well as Section 20(a) of the Exchange Act.

3 Movant's certification identifying his transactions in SunEdison securities, as required by the PSLRA, as well as a chart identifying their losses are attached to the declaration of John J. Miller ("Miller Decl."), dated February 1, 2016 as Exhibits A and B, respectively.

such, Movant meets the requirements of the PSLRA for appointment as Lead Plaintiff. Moreover, Movant satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that his claims are typical of the claims of the Class, and he will fairly and adequately represent the interests of the Class.[4]

The PSLRA provides for the Court to appoint as lead plaintiff the movant that has the largest financial interest in the litigation and have made a *prima facie* showing that it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. *See, generally, In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002); *In re Novastar Fin. Sec. Litig.*, No. 04-0330-CV-W-ODS, 2007 U.S. Dist. LEXIS 9039, at *18 (W.D. Mo. 2007). Movant satisfies both requirements.

## STATEMENT OF FACTS

SunEdison is a developer of wind and solar energy projects. Compl. ¶¶ 2[5]. Throughout the Class period, the defendants misled investors by providing the impression that the Company had the financial capacity to sustain its continued growth. *Id.* However, the truth was later revealed the Company's acquisition binge was nothing more than a scheme to defraud investors. *Id.*

The Company is dependent upon the use of "YieldCos," a dividend growth-oriented public company, created by a parent company that bundles renewable and/or conventional long-term

---

[4] The "Class" is comprised of all persons who purchased SunEdison common stock during the Class Period and were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

[5] Citations to "¶ __" are to paragraphs of the First Amended Class Action Complaint (the "Complaint") filed in the *Horowitz* Action. The facts set forth in the Complaint are incorporated herein by reference.

contracted operating assets in order to generate predictable cash flows. *Kunz* Action Compl. at ¶ 3. The cash raised from these YieldCos allows companies to pay off debt or finance new projects at lower rants than through tax equity finance. *Id.*

On February 19, 2014, the Company issued a press release that touted the Company's financials for the fourth fiscal quarter 2013. *Id.* at ¶ 30. The press stated the Company reflected that the company's solar energy operations were strong and had a growing pipeline. *Id.*

On August 7, 2014, the Company held a conference call with analysts and investors to discuss its second quarter 2014 financial results. ¶ 21. During this conference call, Wuebbels assured investors that the Company's YieldCo strategy benefited both SunEdison and investors because the Company would maintain the same rigorous project selection and financing criteria. *Id.*

On May 29, 2914, the Company announced that its YieldCo, TerraForm Power, Inc. had filed a registration statement in connection with its initial public offering. ¶ 17. On July 29, 2014, TerraForm Power, Inc. began trading on NASDAQ. *Id.*

On November 6, 2014, the Company held a conference call to discuss its third quarter 2014 financial results. ¶ 22. During the conference call, Wuebbels touted the Company's strong financial condition and stated that the Company remained "comfortable" with its balance sheet and liquidity position and further stated that its projects business showed no signs of margin erosion. *Id.* Defendant Wuebbels made these statements despite other renewable energy companies having reported declining margins. *Id.*

Over the following months, the Company continued on its acquisition strategy. ¶ 23. In furtherance of this strategy, on January 29, 2015, the Company acquired First Wind Holdings, LLC ("First Wind") for $2.4 billion. *Id.*

On March 2, 2015, the Company filed its annual report on Form 10-K for the 2014 fiscal year. ¶ 26. The Form 10-K assured investors that "our liquidity will be sufficient to support our operations for the next twelve months . . . ." *Id.*

On May 7, 2015, the Company announced that it had filed a registration statement as part of the launch of and IPO of its YieldCo, TerraForm Global, Inc., the Company's second YieldCo IPO (with the first being Terra Power, Inc. on July 17, 2014) ¶¶ 17, 27. Also, on May 7, 2015, the Company filed its Form 10-Q with the SEC for the first fiscal quarter 2015, which reported $2.6 billion in recourse obligations and $5 billion in non-recourse obligations. *Id.*

To continue its growth, the Company continued to incur additional debt. ¶ 29. On June 16, 2015, the Company announced in a press release the acquisition of Globeleq Mesoamerica Energy ("GME"), a renewable energy company based in Central America. *Id.* In the press release, Chatila touted the expansion of SunEdison misled investors that the Company was building a plan of sustainable growth. *Id.*

On July 20, 2015, the Company issued a press release announcing its acquisition of Vivint Solar, Inc., a residential solar systems provider in the United States, for $2.2 billion in cash, stock and convertible notes. ¶ 31. Chatila stated that after the successful acquisition of First Wind, the acquisition of Vivint Solar, Inc. was "a logical step" and stated that "[w]ith Vivint Solar, we're tripling our value." *Id.* However, unbeknownst to investors, SunEdison's acquisition plans were untenable. ¶ 26, p. 9.[6]

Thereafter, on July 31, 2015, the Company launched the initial public offering of TerraForm Global, Inc. ¶ 27. Despite the Company's intentions to sell approximately 56.6 million

---

[6] Citations to "¶ __, p. ___" are citations to the paragraphs in the Complaint where the numbering was duplicated. After paragraph 31, the Complaint incorrectly lists the subsequent paragraph as paragraph 25.

shares for approximately $1 billion in capital, the Company was only able to raise $675 million by selling 45 million shares for less than previously expected. *Id.*

Thereafter, on August 6, 2015, the truth began to emerge, when the Company issued a press release announcing its second quarter 2015 financial results. ¶ 30, p. 9. Although investors were told that the Company continued to balance operational execution with the Company's strategic objections, the Company reported a loss of $263 million on $455 million of revenue and a net loss of $0.93 per share compared to estimates of a net loss of $0.55 per share. *Id.* Furthermore, despite the Company missing the estimates, during the Company's conference call on the same day, Wuebbels continued to assure investors of the Company's strong liquidity position and ability to raise capital. ¶ 32, p. 10.

Then, on October 5, 2015, the Company filed a Form 8-K which announced layoffs of 15% of its workforce, as well as, restructuring charges of $30 to $40 million for the third quarter 2015 through the first quarter of 2016. ¶ 35, p.10. One day later, the *Wall Street Journal* reported that the Company failed to make a required $400 million upfront payment for a planned $700 million acquisition of Latin American Power ("LAP"). ¶ 36, p. 11. This article further reported that the attorneys for LAP stated that SunEdison was in breach of its obligations under the deal. ¶ 36, p.11. On October 6, 2015, SunEdison common stock closed at $8.69. ¶ 37, p.11

On October 7, 2015, the Company reported more disappointing news as it lowered its 2016 projections and announced that it would not sell any projects to Terra Form Global, Inc. or Terra Power, Inc. during 2016. ¶ 38, p.11. Chatila further announced the Company planned to cut its expansion plans in emerging markets, including Latin America. *Id.*

On November 9, 2015, the Company announced its third quarter 2015 financial results and reported margins of 8% compared to guidance of 20% for its retained projects. ¶ 42, p.12.

Additionally, in its Form 10-Q for the third fiscal quarter 2015 the Company reclassified $700 million of non-recourse debt as recourse debt and announced that it entered into a one-year $170 million loan with Goldman Sachs at a 15% interest rate on August 11, 2015. ¶¶ 43-44, p.13. An analyst from Axiom Capital Management explained that such a loan indicated the Company had "emergency cash needs" and that only a "distressed company" would be forced to take out a loan on such terms. ¶ 44, p.13. As a result of the Company's disclosures of its true debt and liquidity position, as well as, declining project margins, the Company shares plunged over 30%, falling from $7.40 per share on November 9, 2015, to close at $4.54 per share on November 12, 2015. [¶ 45, p.13.

Between November 11, 2015 and November 16, 2015, a series of articles were published discussing in further detail the Company's disclosures on November 9th and 10th. *Kunz* Action Compl. at ¶¶ 52-57. Based on the information contained in these articles, the Company's stock price continued to fall. *Id.*

Finally, on January 7, 2016, the Company issued a press release which announced a restructuring plan whereby SunEdison would issue $725 million of "Second Lien Secured Term Loans," and "entered into a series of exchange agreements with certain holders of its Convertible Senior Notes due 2018, 2020, 2022 and 2025 and its Perpetual Convertible Preferred Stock." *Kunz* Action Compl. at ¶ 58. As a result of this news and other relevant information contained within this press release, the Company's stock priced declined $2.17 per shares, or approximately 40%, to close on at $3.34 per share on January 7, 2016. *Id.* at 59.

## ARGUMENT

### I. The Actions Should Be Consolidated

The PSLRA provides that "[i]f more than one action on behalf of a class asserting

substantially the same claim or claims arising under this [sub-]chapter have been filed," the Court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Thereafter, the Court "shall appoint the most adequate plaintiff for the consolidated actions." *Id*.

Under Rule 42(a) of the Federal Rules of Civil Procedure, consolidation is appropriate when the actions involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a). "[C]ourts have taken the view that considerations of judicial economy favor consolidation." *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) (quoting *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990)). Consolidation is particularly appropriate in securities class action litigation. *See Mitchell v. Complete Mgmt., Inc.*, No. 99-CV-1454 (DAB), 1999 WL 728678, at *1 (S.D.N.Y. Sept. 17, 1999) ("In securities actions where the complaints are based on the same 'public statements and reports' consolidation is appropriate if there are common questions of law and fact . . . .") (citation omitted); *Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997). Courts, therefore, routinely find that consolidating multiple securities cases is an efficient solution where the complaints arise generally from the same alleged false and misleading statements.

The Actions present similar factual and legal issues, as they all involve the same subject matter and are based on the same wrongful course of conduct. The Actions name the substantially the same parties as defendants. Because they arise from the same facts and circumstances and involve the same subject matter, the same discovery and similar class certification issues will be relevant to all related actions. Accordingly, consolidation under Rule 42(a) is appropriate. *See Celotex Corp.*, 899 F.2d at 1285.

Once the Court decides the consolidation motion, the PSLRA mandates that the Court decide the lead plaintiff issue "[a]s soon as practicable." 15 U.S.C. § 78u-4(a)(3)(B)(ii); 15 U.S.C. § 77z-1(a)(3)(B)(ii). Here, a prompt determination is reasonable and warranted under Rule 42(a), given the common questions of fact and law presented by the Actions now pending in this District.

## II. THE COURT SHOULD APPOINT MOVANT AS LEAD PLAINTIFF

### A. The Procedure Required by the PSLRA

Once the Court decides the consolidation motion, the PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a).

The plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment of lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A). The PSLRA requires the Court to consider within 90 days all motions filed within 60 days after publication of that notice by any person or group of persons who are members of the proposed class to be appointed lead plaintiff. 15 U.S.C. §§ 78u-(a)(3)(A)(i)(II) and (a)(3)(B)(i).

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

> (aa) has either filed the complaint or made a motion in response to a notice;
>
> (bb) in the determination of the court, have the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a class

member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Movant satisfies the foregoing criteria and is not aware of any unique defenses that Defendants could raise against him. Therefore, Movant is entitled to the presumption that he is the most adequate plaintiff to represent the Class and, as a result, should be appointed lead plaintiff in the Actions.

**1. Movant Is Willing to Serve as Class Representative**

On December 1, 2015, counsel in the first-filed action caused a notice (the "Notice") to be published pursuant to Section 21D(a)(3)(A) of the Exchange Act, which announced that a securities class action had been filed against SunEdison and which advised putative class members that they had until February 1, 2016 to file a motion to seek appointment as a lead plaintiff in the action.[7] Movant has reviewed a complaint filed in the pending Actions and has timely filed his motion pursuant to the Notice.

**2. Movant has the Requisite Financial Interest in the Relief Sought by the Class**

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as lead plaintiff the movant or movants with the largest financial loss in the relief sought by the action. As demonstrated herein, Movant has the largest known financial interest in the relief sought by the Class. *See* Miller Decl., Ex. B. The movant who with the largest financial interest and meets the requirements of typicality and adequacy under Rule 23 is presumptively the lead plaintiff. *See Stengle v. Am. Italian Pasta Co.*, No. 05-0725-CV-W-ODS, 2005 U.S. Dist. LEXIS 43816, at *11

[7] An action was filed in this Court on November 30, 2015, entitled *Horowitz v. SunEdison, Inc., et. al.*. Case No. 4:15-cv-01769-RWS ("*Horowitz* Action"). On December 1, 2015, the Notice was published over *PR Newswire,* a widely circulated national business oriented wire service. *See* Miller Decl. Exhibit C.

(W.D. Mo. Dec. 19, 2005); *Maiden v. Merge Techs., Inc.*, No. 06-cv-349, 2006 U.S. Dist. LEXIS 85635, 13 (E.D. Wis. Nov. 21, 2006) (citing *In re Cavanaugh*, 306 F.3d at 732); *Boyd v. Novastar Fin., Inc.*, No. 07-0139-CV-W-ODS, 2007 U.S. Dist. LEXIS 49528, at *8-9 (W.D. Mo. July 9, 2007); *Weltz v. Lee*, 199 F.R.D. 129, 132 (S.D.N.Y. 2001).

Under the PSLRA, damages are calculated based on (i) the difference between the purchase price paid for the shares and the average trading price of the shares during the 90-day period beginning on the date the information correcting the misstatement was disseminated, or (ii) the difference between the purchase price paid for the shares and the average trading price of the shares between the date when the misstatement was corrected and the date on which the plaintiff sold their shares, if they sold their shares before the end of the 90-day period. 15 U.S.C. § 78u-4(e).

During the Class Period, Movant purchased SunEdison common stock in reliance upon the materially false and misleading statements issued by defendants, and was injured thereby. Movant suffered a substantial loss of $441,058.82. *See* Miller Decl., Exhibit B. Movant thus has a significant financial interest in the outcome of this case. To the best of his knowledge, there is no other applicant who has sought, or is seeking, appointment as lead plaintiff that has a larger financial interest and also satisfies Rule 23.

**B. Movant Satisfy the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure**

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the

> representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification outlined in Fed. R. Civ. P. 23, only two – typicality and adequacy – are recognized as appropriate for consideration at this stage. *See Cavanaugh*, 306 F.3d at 730, n.5, 732. Furthermore, only a "preliminary showing" of typicality and adequacy is required at this stage. *See Stengle*, 2005 U.S. Dist. LEXIS 43816, at *22. Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See Cavanaugh*, 306 F.3d at 732; *see also Stengle*, 2005 U.S. Dist. LEXIS 43816, at *22-23; *Haung v. Acterna Corp.*, 220 F.R.D. 255, 259 (D. Md. 2004); *In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 414 (D.N.J. 1998); *Boyd*, 2007 U.S. Dist. LEXIS 49528, *17-19.

As detailed below, Movant satisfies both the typicality and adequacy requirements of Fed. R. Civ. P. 23, thereby justifying his appointment as Lead Plaintiff.

**1. Movant's Claims are Typical of the Claims of all the Class Members**

Under Rule 23(a)(3), typicality exists where "the claims . . . of the representative parties" are "typical of the claims . . . of the class." Movant plainly meets the typicality requirement of Rule 23 because: (i) he suffered the same injuries as the absent class members; (ii) he suffered as a result of the same course of conduct by Defendants; and (iii) his claims are based on the same legal issues. *See Ferrari v. Gisch*, 225 F.R.D. 599, 607 (C.D. Cal. 2004); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998) (typicality inquiry analyzes whether plaintiff's claims "arise from the same conduct from which the other

class members' claims and injuries arise"). Rule 23 does not require that the named plaintiff be identically situated with all class members. It is enough if their situations share a common issue of law or fact. *See Weiss v. York Hosp.*, 745 F.2d 786, 808-09 (3d Cir. 1984). A finding of commonality frequently supports a finding of typicality. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (noting that the typicality and commonality requirements tend to merge).

In this case, the typicality requirement is met because Movant's claims are identical to, and neither compete nor conflict with the claims of the other Class members. Movant, like the other members of the Class, acquired SunEdison securities during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements, and was damaged thereby. Thus, his claims are typical, if not identical, to those of the other members of the Class because Movant suffered losses similar to those of other Class members and his losses result from Defendants' common course of wrongful conduct. Accordingly, Movant satisfies the typicality requirement of Rule 23(a)(3). *See Weiss*, 745 F.2d at 809; *see also In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992).

**2. Movant Will Adequately Represent the Class**

Moreover, Movant is an adequate representative for the Class. Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class. 15 U.S.C. §78u-4(a)(3)(B); *see Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994) (citation omitted); *see Drexel Burnham*, 960 F.2d at 291; *Weltz*, 199 F.R.D. at 133.

Movant's interests are clearly aligned with those of the other members of the Class. Not only is there no evidence of antagonism between Movant's interests and those of the Class, but Movant has a significant and compelling interest in prosecuting the Actions based on the large financial losses he has suffered as a result of the wrongful conduct alleged in the Actions. This motivation, combined with Movant's identical interest with the members of the Class, demonstrates that Movant will vigorously pursue the interests of the Class. In addition, Movant has retained counsel highly experienced in prosecuting securities class actions, and will submit his choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). Therefore, Movant will prosecute the Actions vigorously on behalf of the Class.

Accordingly, at this stage of the proceedings, Movant has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfy 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). In addition, because Movant has sustained the largest amount of losses from Defendants' alleged wrongdoing, he is, therefore, the presumptive lead plaintiff in accordance with 15 U.S.C. § 78u-4(3)(B)(iii)(I), and should be appointed as such to lead the Actions.

## III. MOVANT'S CHOICE OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with the lead plaintiff's selection of counsel only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected and retained Levi & Korsinsky as the proposed Lead Counsel and Swanson Midgley as liaison counsel for the Class. The members of Levi & Korsinsky have extensive experience in successfully prosecuting complex securities class actions such as this one,

and are well-qualified to represent the Class. *See* Miller Decl. Ex. D (the firm resume of Levi & Korsinsky).

## CONCLUSION

For the foregoing reasons, Movant respectfully requests that this Court: (1) consolidate the Actions, (2) appoint Movant as Lead Plaintiff for the Class in the Action; and (3) approve Levi & Korsinsky as Lead Counsel and Swanson Midgley as liaison for the Class.

Dated: February 1, 2016

Respectfully submitted,

SWANSON MIDGLEY, LLC

/s/ John J. Miller
John J. Miller, #32215MO
4600 Madison, Suite 1100
Kansas City, MO 64112
Phone: 816-842-6100
Fax: 816-842-0013
E-mail: jmiller@swansonmidgley.com

**LEVI & KORSINSKY LLP**
Nicholas I. Porritt
Adam M. Apton
1101 30th Street, NW
Suite 115
Washington, DC 20006
Tel: (202) 524-4290
Fax: (202) 333-2121
Email: nporritt@zlk.com
Email: aapton@zlk.com
(*pro hac vice to be submitted*)

*Proposed Lead Counsel for Movant Andrew C. Newman*

**Certificate of Service**

The undersigned hereby certifies that the foregoing was filed electronically, using the Court's ECF/CM system, and served upon all counsel of record thereby.

/s/ John J. Miller