**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| DINA HOROWITZ, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SUNEDISON, INC., AHMAD CHATILA, and BRIAN WUEBBELS,<br><br>Defendants. | Cause No. 4:15-cv-01769-RWS |
| KENNETH J. MOODIE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SUNEDISON, INC., AHMAD CHATILA, and BRIAN WUEBBELS,<br><br>Defendants. | Cause No. 4:15-cv-01809-ERW |
| ROBERT KUNZ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SUNEDISON, INC., AHMAD R. CHATILA, and BRIAN WUEBBELS,<br><br>Defendants. | Cause No. 4:16-cv-00113-HEA |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE MUNICIPAL EMPLOYEES' RETIREMENT SYSTEM OF MICHIGAN FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF ITS SELECTION OF LEAD COUNSEL, AND FOR CONSOLIDATION OF ALL RELATED ACTIONS**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ... ii

PRELIMINARY STATEMENT ... 1

STATEMENT OF FACTS ... 3

ARGUMENT ... 5

I. MERS SHOULD BE APPOINTED LEAD PLAINTIFF ... 5

A. MERS Has The Largest Financial Interest In The Relief Sought By The Class ... 5

B. MERS Satisfies The Requirements Of Rule 23 ... 6

II. THE COURT SHOULD APPROVE MERS'S SELECTION OF LEAD COUNSEL ... 8

III. THE RELATED ACTIONS SHOULD BE CONSOLIDATED ... 9

CONCLUSION ... 9

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Minneapolis Firefighters' Relief Ass'n v. MEMC Elec. Materials, Inc.*,
No. 4:08-CV-1411 (CEJ), 2008 WL 5233106 (E.D. Mo. Dec. 12, 2008).........................5, 6, 7

*Rochester Laborers Pension Fund v. Monsanto Co.*,
No. 4:10CV1380 CDP, 2010 WL 4444832 (E.D. Mo. Oct. 1, 2010).......................................5

*W. Wash. Laborers-Emps. Pension Trust v. Panera Bread Co.*, No.
4:08CV00120-ERW, 2008 WL 2559431 (E.D. Mo. June 23, 2008)........................................9

**RULES AND STATUTES**

Fed. R. Civ. P. 23(a)(4)..................................................................................................6

15 U.S.C. § 78u-4(a)(3)(A)..............................................................................................4

15 U.S.C. § 78u-4(a)(3)(B)........................................................................................ *passim*

**OTHER AUTHORITIES**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 (1995).......................7

The Municipal Employees' Retirement System of Michigan ("MERS") respectfully submits this memorandum of law in support of its motion: (1) to be appointed Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (2) for approval of its selection of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Lead Counsel and Gray, Ritter & Graham, P.C. ("Gray Ritter") as Liaison Counsel for the Class; (3) for consolidation of all related actions; and (4) for any such further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

There are currently at least three related actions (the "Related Actions") pending in this District against SunEdison, Inc. ("SunEdison" or the "Company"). The Related Actions allege that the Company and certain of its senior officers (collectively, "Defendants") violated Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). Specifically, the Related Actions allege that, during the time period from February 19, 2014 through January 6, 2016, inclusive (the "Class Period"), Defendants misrepresented the true nature of the Company's debt profile, liquidity position, as well as the viability of SunEdison's so-called "yieldco" business model.[1]

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine

---

[1] The three actions against SunEdison pending in this District assert different class periods. For purposes of this motion, MERS's financial interest is presented under the period of February 19, 2014 through January 6, 2016, the Class Period asserted in *Kunz v. SunEdison, Inc.*, No. 4:16-cv-00113 (E.D. Mo.).

which movant has the "largest financial interest" in the relief sought by the Class in this litigation, and also whether that movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). For the reasons set forth below, MERS is the "most adequate plaintiff" by virtue of, among other things, its substantial investments in SunEdison common stock during the Class Period. Specifically, MERS purchased a significant amount of shares on both a gross and net basis, expended significant sums on a net basis on these transactions, and incurred significant losses on its Class Period investments. MERS also satisfies the relevant requirements of Rule 23 because its claims are typical of all members of the Class, and it will fairly and adequately represent the Class.[2]

Indeed, MERS is a paradigmatic Lead Plaintiff under the PSLRA because it is a sophisticated institutional investor with a real financial interest in the litigation, and has experience serving as Lead Plaintiff in complex securities class actions under the PSLRA and supervising the work of outside counsel. Accordingly, MERS has both the incentive to vigorously prosecute this action, and the proven ability to supervise and monitor counsel. Further, MERS has retained Bernstein Litowitz, a law firm with substantial experience in successfully prosecuting securities class actions, to serve as Lead Counsel for the Class, and has selected Gray Ritter to serve as Liaison Counsel for the Class. Accordingly, MERS respectfully requests that the Court appoint it Lead Plaintiff and otherwise grant its motion.

[2] MERS's PSLRA-required Certification is attached as Exhibit A to the Declaration of Maurice B. Graham in Support of the Motion of the Municipal Employees' Retirement System of Michigan for Appointment as Lead Plaintiff, Approval of Its Selection of Lead Counsel, and Consolidation of All Related Actions ("Graham Decl."). In addition, a chart setting forth MERS's transactions and financial interest in SunEdison common stock is attached as Exhibit B to the Graham Decl.

**STATEMENT OF FACTS**

SunEdison is one of the largest renewable energy companies in the world, and its primary business is focused on the financing and operation of solar and wind power plants. In conducting its business, the Company was highly dependent upon the use of entities known as "YieldCos," which facilitate the financing of various types of clean energy production. A YieldCo is a public company (created by a parent, in this case, SunEdison) that is used to bundle long-term operating assets in order to generate predictable cash flows.

Throughout the Class Period, SunEdison defrauded investors with regard to the Company's liquidity position, debt profile, and the viability of SunEdison's YieldCo strategy. For instance, Defendant Wuebbels told investors that SunEdison's YieldCo strategy benefitted investors because SunEdison underwrote "high quality, high value projects," that would allow a YieldCo to maintain its growth and dividend. Further, Defendants also repeatedly represented during the Class Period that SunEdison's liquidity and financial condition was strong, and that the Company had sufficient liquidity to support its business.

Investors began to learn the truth about the Company's financial condition and business through a series of corrective disclosures. For example, on November 9, 2015, SunEdison announced earnings results for its third quarter of 2015 and disclosed that it had reclassified over $700 million worth of non-recourse debt, meaning that the lender could now recover the loans directly from the Company. In addition, SunEdison announced that it had entered into a one-year $170 million loan with Goldman Sachs at a punitive 15% interest rate in August 2015—*i.e.*, at the same time that the Company was assuring investors that its liquidity position was strong. In response to these disclosures, SunEdison shares fell over 30%, from $7.40 per share on November 9, 2015 to close at $4.54 per share on November 12, 2015.

Then, on January 7, 2016, SunEdison announced a debt restructuring plan that further disadvantaged shareholders, and revealed the Company's financial condition was much worse than defendants had led investors to believe. On this news, the Company's stock declined $2.17 per share, or nearly 40%, to close at $3.34 per share on January 7, 2016. In all, SunEdison shares have fallen approximately 90% from their Class Period high.

In the wake of these disclosures, investors filed several securities class actions asserting claims under the Exchange Act against the defendants. Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A). On November 30, 2015, plaintiff Dina Horowitz filed a securities class action against SunEdison and certain of its senior executives in the Eastern District of Missouri. *See Horowitz v. SunEdison, Inc.*, No. 4:15-cv-01769-RWS (E.D. Mo.) ("*Horowitz*"). On December 1, 2015, counsel for Ms. Horowitz published a notice alerting investors to the pendency of the action and that the deadline for investors to seek Lead Plaintiff status was February 1, 2016. *See* Graham Decl., Ex. C. On January 19, 2016, Ms. Horowitz filed a First Amended Class Action Complaint, which expanded the Class Period to run from August 7, 2014 through November 9, 2015, inclusive. *See Horowitz*, ECF No. 10. That same day, counsel for Ms. Horowitz published a notice informing investors of the expanded class period, and that this filing did not alter the February 1, 2016 deadline for seeking appointment as Lead Plaintiff. *See* Graham Decl., Ex. D. Then, on January 28, 2016, another investor filed a complaint asserting a class period of February 19, 2014 through January 6, 2016 and, that same day, his counsel published a notice concerning the filing of that action. *See* Graham Decl., Ex. E. MERS has satisfied the PSLRA's 60-day requirement through the filing of this motion.

## ARGUMENT

### I. MERS SHOULD BE APPOINTED LEAD PLAINTIFF

MERS respectfully submits that it should be appointed Lead Plaintiff because it is the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B); *see also Minneapolis Firefighters' Relief Ass'n v. MEMC Elec. Materials, Inc.*, No. 4:08-CV-1411 (CEJ), 2008 WL 5233106, at *1 (E.D. Mo. Dec. 12, 2008). When selecting a Lead Plaintiff, the PSLRA establishes a presumption that the "most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B); *see also Rochester Laborers Pension Fund v. Monsanto Co.*, No. 4:10CV1380 CDP, 2010 WL 4444832, at *1 (E.D. Mo. Oct. 1, 2010).

#### A. MERS Has The Largest Financial Interest In The Relief Sought By The Class

MERS should be appointed Lead Plaintiff because it believes that it has the largest financial interest in the relief sought by the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). As demonstrated herein, MERS purchased a significant amount of SunEdison shares on a gross and net basis, expended significant sums on a net basis on these transactions, and sustained losses of approximately $8.3 million on a first-in, first-out basis ("FIFO") basis, and $7 million on a last-in, first-out ("LIFO") basis. *See* Graham Decl., Exs. A, B. To the best of MERS's knowledge, there is no other applicant seeking Lead Plaintiff appointment that has a larger financial interest in this litigation. Accordingly, MERS has the largest financial interest of any qualified movant seeking Lead Plaintiff status, and is the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

**B. MERS Satisfies The Requirements Of Rule 23**

In addition to possessing the largest financial interest in the outcome of the litigation, MERS otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). On a motion to serve as Lead Plaintiff, the movant need only make a preliminary showing that it satisfies Rule 23's typicality and adequacy requirements. *See MEMC*, 2008 WL 5233106, at *1 ("The Court 'must deem' the movant with the largest financial interest the presumptive lead plaintiff if it 'makes a prima facie showing that it satisfies the typicality and adequacy requirements of Rule 23'") (citation omitted). Here, MERS unquestionably satisfies both requirements.

MERS's claims are typical of the claims of other purchasers of SunEdison stock. Typicality is satisfied "when each class member makes similar legal arguments to prove the defendant's liability." *Id.* at *2 (citation omitted). Here, MERS and each class member will make virtually identical arguments to prove Defendants' liability. Like all other Class members, MERS: (1) purchased SunEdison securities during the Class Period; (2) at prices allegedly artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) was damaged thereby. *See id.* (typicality requirement met when "the class consists of those who, [like the presumptive Lead Plaintiff], purchased [] securities during the class period at inflated prices and suffered damages as a result").

MERS likewise satisfies the adequacy requirement of Rule 23. Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, the representative party must "fairly and adequately protect the interests of the Class." Fed. R. Civ. P. 23(a)(4). In order for the Class' interests to be fairly and adequately represented, a Lead Plaintiff must demonstrate that "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no antagonism between the interests of the proposed lead plaintiff and the other members of the class; and (3) the proposed lead plaintiff has sufficient interest in the outcome to ensure vigorous advocacy." *MEMC*, 2008

WL 5233106, at *2 (citation omitted). As demonstrated by the Certification submitted by Patricia Tarini, General Counsel of MERS, MERS is a sophisticated institutional investor that understands and accepts the duties and responsibilities owed to other Class members to monitor the prosecution of this action in the best interests of the Class. *See* Graham Decl., Ex. A.

Further, MERS's interests are perfectly aligned with those of the other Class members and are not antagonistic in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between MERS and other Class members. Indeed, MERS has a substantial financial interest in the claims against defendants, which ensures that MERS will vigorously prosecute the action in the best interests of the Class.

Further, MERS is the very sort of Lead Plaintiff envisioned by Congress in its enactment of the PSLRA—a sophisticated institutional investor with a substantial financial interest in the litigation. *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"). Significantly, MERS successfully served as Lead Plaintiff in a securities class action subject to the PSLRA in the Western District of Missouri and recovered $18 million on behalf of investors. *See Smith v. Interstate Bakeries Corp.*, No. 4:03-cv-0142-FJG (W.D. Mo.). Accordingly, MERS is well aware of the Lead Plaintiff's obligations under the PSLRA to oversee and supervise the litigation separate and apart from counsel and is more than adequate to represent the Class' interests here.

Last, and as more fully discussed below, MERS has demonstrated its adequacy through its selection of Bernstein Litowitz as Lead Counsel, and its selection of Gray Ritter as Liaison Counsel, to represent the Class in this action.

## II. THE COURT SHOULD APPROVE MERS'S SELECTION OF LEAD COUNSEL

The Court should approve MERS's selection of Bernstein Litowitz as Lead Counsel on behalf of the Class. Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), a movant shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent, and the Court should not disturb Lead Plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Bernstein Litowitz is among the preeminent securities class action law firms in the country. *See* Bernstein Litowitz's Firm Resume, Graham Decl., Ex. F. Bernstein Litowitz served as Lead Counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-03288-DLC (S.D.N.Y.), in which settlements totaling in excess of $6 billion—one of the largest recoveries in securities class action history—were obtained for the Class. Bernstein Litowitz also secured a resolution of $2.43 billion in *In re Bank of America Corp. Securities, Derivative & ERISA Litigation*, No. 09-md-2058-PKC (S.D.N.Y.), and a $730 million recovery in *In re Citigroup Inc. Bond Litigation*, No. 08-cv-9522-SHS (S.D.N.Y.) on behalf of the class.

In this Circuit, Bernstein Litowitz served as Co-Lead Counsel in *In re UnitedHealth Group, Inc. Shareholder Derivative Litigation*, No. 06-cv-1216-JMP-FLN (D. Minn.) and recovered over $920 million, one of the largest shareholder derivative action recoveries ever. Bernstein Litowitz also served as Co-Lead Counsel in the securities class action against Medtronic, Inc., captioned, *Minneapolis Firefighters' Relief Association v. Medtronic, Inc.*, No. 08-cv-6324-PAM-AJB (D. Minn.) and secured an $85 million recovery for investors. Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation.

Similarly, Gray Ritter has a long-established history of prosecuting complex class action litigation and achieving substantial recoveries for class members. *See* Bernstein Litowitz's Firm Resume, Graham Decl., Ex. G. For example, Gray Ritter was responsible for obtaining the $6.7

billion recovery on behalf of the State of Missouri in litigation against major tobacco companies arising out of tragic tobacco-related injuries and deaths. In another matter, Gray Ritter served as lead counsel in a bellwether trial on behalf U.S. farmers who were harmed when genetically modified rice developed by Bayer CropScience LP tainted their crops. In that action, Gray Ritter ultimately helped to recover $750 million for the class. Accordingly, the Court should approve MERS's selection of Bernstein Litowitz as Lead Counsel and Gray Ritter as Liaison Counsel for the Class.

## III. THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Presently pending in this District are at least three related securities class actions:

| Case Number | Abbreviated Case Name | Date Filed |
|---|---|---|
| 4:15-cv-01769 | *Horowitz v. SunEdison, Inc.* | 11/30/15 |
| 4:15-cv-01809 | *Moodie v. SunEdison, Inc.* | 12/09/15 |
| 4:16-cv-00113 | *Kunz v. SunEdison, Inc.* | 1/28/16 |

These securities class actions present virtually identical factual and legal issues because they each allege claims under Sections 10(b) and 20(a) of the Exchange Act, name the same Defendants, and arise out of the same alleged misstatements and omissions regarding SunEdison's financial position and business strategy. Accordingly, consolidation of these actions is appropriate under Rule 42(a) of the Federal Rules of Civil Procedure. *See, e.g., W. Wash. Laborers-Emps. Pension Trust v. Panera Bread Co.*, No. 4:08-CV00120-ERW, 2008 WL 2559431, at *1 (E.D. Mo. June 23, 2008) (consolidating "actions [] brought by shareholders of [company] during the relevant time period who were injured by what they allege were materially false and misleading statements made by Defendants").

## CONCLUSION

For the reasons discussed above, MERS respectfully requests that the Court: (1) appoint MERS to serve as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C.

§ 78u-4(a)(3)(B); (2) approve MERS's selection of Bernstein Litowitz as Lead Counsel and Gray Ritter as Liaison Counsel for the Class; (3) consolidate the related actions; and (4) grant such other relief as the Court may deem just and proper.

DATED: February 1, 2016

*/s/ Maurice B. Graham*

**GRAY, RITTER & GRAHAM, P.C.**
Maurice B. Graham (#18029MO)
Don M. Downing (#30405MO)
701 Market Street, Suite 800
St. Louis, Missouri 63101
Telephone: 314-732-0728
Facsimile: 314-241-4140
mgraham@grgpc.com
ddowning@grgpc.com

*Liaison Counsel for Proposed Lead Plaintiff Municipal Employees' Retirement System of Michigan*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

Gerald H. Silk (*pro hac vice forthcoming*)
Avi Josefson (*pro hac vice forthcoming*)
Michael D. Blatchley (*pro hac vice forthcoming*)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
jerry@blbglaw.com
avi@blbglaw.com
michaelb@blbglaw.com

*Counsel for Proposed Lead Plaintiff Municipal Employees' Retirement System of Michigan and Proposed Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of February 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Maurice B. Graham*
Maurice B. Graham